CITY OF CLEVELAND, APPELLEE, *v.* SUNDERMEIER, APPELLANT. ■

(No. 55110 — Decided April 3, 1989.)

*Patricia A. Blackmon,* chief prosecutor, and *Gary Williams,* for appellee.

*Dworken & Bernstein Co., L.P.A.,* and *Patrick J. Perotti; Joseph Lhota,* for appellant.

ANN MCMANAMON, C.J. Kenneth Sundermeier timely appeals his conviction in Cleveland Municipal Court for trespassing (Cleveland Codified Ordinance Section 623.04[a][4]). He raises three assignments of error[1] which challenge the trial court's evidentiary rulings and jury instructions. Since none of the defendant's arguments is meritorious, we affirm the conviction.

Sundermeier's arrest for trespassing arose from his anti-abortion efforts at the Cleveland Center for Reproductive Health ("the Center"), an abortion clinic on Cleveland's east side. On the morning of August 22, 1987, a volunteer at the Center informed the Center security guard that Sundermeier was on the ramp of the building parking lot. The guard told Sundermeier he was trespassing and asked him to leave the property. Sundermeier refused and explained he had a recent court decision which, he believed, permitted his presence on private property. The guard returned to the Center where he waited five minutes before again approaching the defendant who was walking to the top of the ramp. Sundermeier continued to ignore the guard's requests to leave and, at trial, the defendant admitted he followed an auto in the lot and spoke with the driver about the alternatives to abortion. The guard summoned Cleveland police who arrived after the defendant left the Center property. Sundermeier later was charged with trespassing.

In his first assignment of error, Sundermeier asserts the trial court erroneously refused to allow jury consideration of his right to free speech under the First Amendment to the United States Constitution and Section 11, Article I of the Ohio Constitution.

It is well-established that, in limited circumstances, private property rights must yield to free speech rights. See *Marsh* v. *Alabama* (1946), 326 U.S. 501. In *Marsh,* the Supreme Court reversed a trespass conviction against a Jehovah's Witness who distributed religious literature in a company-owned town. The court found no distinction between a company town and a municipality since "the public in either case has an identical interest in the functioning of the community in such manner that the channels of communication remain free.

---

[1] Appellant's assignments of error are:

I

"A. The trial court erred by refusing to permit evidence on the issue of a privilege under the First Amendment and Article I * * * [, Section 11] of the Ohio Constitution, which privilege would have allowed defendant-appellant to be present on the parking lot adjoining the Center for Reproductive Health for the purpose of exercising his right of free speech.

"B. The trial court erred in invading the province of the jury to resolve factual questions directly relevant and material to that issue."

II

"The trial court erred by refusing to permit evidence on the issue of a privilege under the doctrine of necessity which privilege would have made it lawful for the defendant-appellant to be present on the parking lot adjoining the Center for Reproductive Health for the purpose of warning persons entering the center of the imminent harm incurred in the abortion process."

* * *" *Id.* at 507. The court further noted "[t]he more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it. * * *" *Id.* at 506.

In *Amalgamated Food Employees Local 590* v. *Logan Valley Plaza, Inc.* (1968), 391 U.S. 308, the Supreme Court again addressed the issue of free speech and private property rights. In *Logan Valley,* a shopping center owner and supermarket owner sought an injunction against union pickets. In denying the writ, the court stated that the shopping center served as the community business block and was freely accessible to the public. The court described the shopping area as "the functional equivalent of the business district * * * in *Marsh*," *id.* at 318, and held that the public may exercise its First Amendment rights on the premises "in a manner and for a purpose generally consonant with the use to which the property is actually put." *Id.* at 319-320.

The court somewhat retreated from this position in *Lloyd Corp., Ltd.* v. *Tanner* (1972), 407 U.S. 551. In *Lloyd,* the court held that a shopping mall owner could prohibit individuals from distributing anti-war materials in the mall. The demonstrators argued that the mall served the same purpose as a business district and thus they had the same free speech rights as they would have on public streets. The Supreme Court responded:

"The argument reaches too far. The Constitution by no means requires such an attenuated doctrine of dedication of private property to public use. The closest decision in theory, *Marsh* v. *Alabama, supra,* involved the assumption by a private enterprise of all of the attributes of a state-created municipality and the exercise by that enterprise of semi-official municipal functions as a delegate of the State. In effect, the owner of the company town was performing the full spectrum of municipal powers and stood in the shoes of the State. In the instant case there is no comparable assumption or exercise of municipal functions or power.

"Nor does property lose its private character merely because the public is generally invited to use it for designated purposes. Few would argue that a free-standing store, with abutting parking space for customers, assumes significant public attributes merely because the public is invited to shop there. Nor is size alone the controlling factor. The essentially private character of a store and its privately owned abutting property does not change by virtue of being large or clustered with other stores in a modern shopping center. * * *" *Id.* at 569.

In distinguishing *Logan Valley,* the court relied upon the fact that the anti-war protesters' message was unrelated to the business of the shopping center. However, the court later rejected this distinction in *Hudgens* v. *Natl. Labor Relations Bd.* (1976), 424 U.S. 507, when it acknowledged that the content of speech cannot serve as a basis for regulation. *Id.* at 520. In *Hudgens,* the court held that striking employees had no First Amendment right to advertise their protest on the grounds of a privately owned shopping center. Thus, after *Hudgens, Lloyd* — not *Logan Valley* — governs such cases.

In the instant case, Sundermeier argues the Center's parking lot is quasi-public and thus his First Amendment right to speech precludes a trespassing conviction. Our review of the evidence proffered by Sundermeier convinces us that the property in this case is not even as open to the public as was the shopping mall in *Lloyd.* The parking area where Sundermeier was

arrested is located between two office buildings, one of which houses the Center and one other tenant. The other building—the Young Medical Building—houses approximately forty-three health service tenants, a pharmacy and a restaurant-snack bar. The parking lot is available only to those individuals with business in the buildings. Both buildings and the parking lot are located on a well-travelled boulevard which contains several other office buildings, all with their own parking areas. Since the Center property contained far fewer attributes of public property than the mall in *Lloyd,* we find the court properly excluded the First Amendment evidence from jury consideration. See, also, *Fairfield Commons Condominium Assn.* v. *Stasa* (1985), 30 Ohio App. 3d 11, 30 OBR 49, 506 N.E. 2d 237 (condomimium complex housing only professional offices may exclude abortion protesters).

Finally, we decline Sundermeier's invitation to read Section 11, Article I of the Ohio Constitution more expansively than the Supreme Court's interpretation of the federal Constitution. Section 11 provides:

"Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press. * * *"

While the Ohio Constitution does not specifically refer to only state interference with the right to free speech, it clearly provides for some limit on the abuse of that right. As we stated in *Cleveland* v. *Egeland* (1986), 26 Ohio App. 3d 83, 26 OBR 259, 497 N.E. 2d 1383, the "right to communicate and persuade [does] not include the right to trespass" on another's rights. *Id.* at paragraph three of the syllabus. In this case, the defendant's right to free speech did

not justify his trespass on the Center's private property.

Accordingly, this assignment of error is overruled.

In his second assignment, Sundermeier asserts the court erred by excluding evidence of his "necessity" defense.

Cleveland Codified Ordinances Section 623.04(a) provides:

"No person, without privilege to do so, shall do any of the following:

"* * *

"(4) Being on the land or premises of another, negligently fail or refuse to leave upon being notified to do so by the owner or occupant, or the agent or servant of either."

"Privilege" is defined by Cleveland Codified Ordinances Section 601. 01(i) as "* * * an immunity, license or right conferred by law, or bestowed by express or implied grant, or arising out of status, position, office or relationship, or growing out of necessity."

Sundermeier sought to introduce evidence that it was "necessary" for him to warn the women seeking an abortion of possible psychological complications from the procedure. The defendant claimed the Center personnel did not warn of this alleged post-abortion trauma.

The defense of necessity excuses criminal acts when the harm which results from compliance with the law is greater than that which results from a violation of the law. See LaFave & Scott, Criminal Law (1972) 381, Section 50. Furthermore, necessity is not a defense if alternatives to the criminal act existed. See *Cleveland* v. *Sabo* (May 14, 1981), Cuyahoga App. Nos. 41999 and 42004, unreported, at 6-7.

At the outset we note that the information defendant wished to convey is properly a subject for the physician-patient relationship. We do not find

the defendant's desire to impart the information a valid basis for his defense. Further, as the trial court ruled, Sundermeier had other alternatives to trespassing such as public sidewalk picketing and the dissemination of information through print and television media. Thus, we find the trial court properly refused to allow the jury to consider the defendant's necessity defense.

Accordingly, this assignment of error is overruled.

In his third assignment Sundermeier contends the court erroneously placed the burden of proving the lack of privilege upon the defense.

This court has held that the state must prove beyond a reasonable doubt "lack of privilege" as an element of trespass. *Beachwood* v. *Cohen* (1986), 29 Ohio App. 3d 226, 29 OBR 272, 504 N.E. 2d 1186; *State* v. *Jones* (June 9, 1988), Cuyahoga App. No. 53906, unreported. See, contra, *State* v. *Gordon* (1983), 9 Ohio App. 3d 184, 9 OBR 294, 458 N.E. 2d 1277 (lack of privilege to obstruct justice not an element to be proven by the state). The record demonstrates that the trial court instructed the jury that the state bore the burden of proving each element of trespass. Furthermore, we note the defendant voiced no objection to the instruction and thus waived this argument on appeal. See *State* v. *Scott* (1986), 26 Ohio St. 3d 92, 26 OBR 79, 497 N.E. 2d 55.

Accordingly, this assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

SWEENEY and WIEST, JJ., concur.

MARK K. WIEST, J., of the Wayne County Court of Common Pleas, sitting by assignment.