CITY OF COLUMBUS, Appellee,

v.

SPINGOLA, Appellant.

[Cite as *Columbus v. Spingola* (2001), 144 Ohio App.3d 76.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–293.

Decided June 19, 2001.

*Janet E. Jackson*, City Attorney, *Stephen L. McIntosh*, City Prosecutor, and *Lara N. Baker*, Assistant City Prosecutor, for appellee.

*Yeura R. Venters*, Franklin County Public Defender, and *John W. Keeling*, Assistant Public Defender, for appellant.

KENNEDY, Judge.

On June 27, 1999, defendant-appellant Charles S. Spingola, climbed a flagpole on the Ohio Statehouse grounds and cut down a rainbow flag, which was flying as a part of a gay pride celebration. For this behavior, Spingola was indicted on one count of ethnic intimidation, a violation of Columbus City Code 2331.08(A). In its indictment, plaintiff-appellant, city of Columbus, alleged that Spingola committed the predicate offense of criminal damaging and that the motive or reason for the offense was the victim's sexual orientation.

The following evidence was presented at a jury trial. Jeff Redfield, the victim of the alleged ethnic intimidation, testified that he is the executive director for Stonewall Columbus, an organization that serves central Ohio's gay, lesbian, bisexual, and transgender community. Redfield applied for and received permission from the Capitol Square Review and Advisory Board to fly the rainbow flag, a symbol of gay pride, on the statehouse lawn as part of a gay pride celebration. Redfield supplied a rainbow flag to Ron Keller, the executive director of the Capitol Square Review and Advisory Board. Keller confirmed that his board granted Redfield's request to fly the rainbow flag. Keller testified that his staff raised the flag on the statehouse lawn on the morning of June 27, 1999.

Several witnesses testified that they saw Spingola climb the flagpole and remove the flag. Richard and Josette Bodonyi, members of Parents and Friends of Lesbians and Gays, testified that they observed Spingola among a group of protestors gathered on the statehouse lawn. According to Mr. Bodonyi, the protestors were talking about the evils of homosexuality and encouraging Spingola to climb the flagpole and remove the flag. Mrs. Bodonyi testified that Spingola had to cut or tear the flag to remove it from the pole. According to Mrs. Bodonyi, Spingola proclaimed that, while he was removing the flag, "no damn faggot flag is going to fly over" the statehouse grounds. Mark Narens, a gay rights supporter, testified that Spingola appeared to be a leader among the protestors, whom Narens characterized as loud and angry. According to Narens, Spingola tore the flag from the pole and threw it to the ground.

Spingola testified on his own behalf and described his troubled life as a child and young man. He stated that he was able to turn his life around as a result of a religious transformation at the age of twenty-three. He testified that he has been preaching his religious beliefs for the past twenty years. He stated that he believes that homosexuality is a sin and that homosexual sinners must be confronted. He testified that he learned from the media that the rainbow flag would be flying at the statehouse, and he admitted that he attended the gay pride celebration on June 27, 1999, with the intention of removing the flag from the statehouse flagpole.

Spingola testified that, on the day at issue, he watched the gay rights parade with other members of his church. When the parade concluded, Spingola walked to the statehouse lawn in order to remove the flag. He testified that he placed a pocketknife in his mouth and climbed the flagpole. When Spingola was not able to pull the flag off the pole, he "cut the flag from the pole and threw it on the ground." He testified that he was proud of his accomplishment. Spingola stated that his main motivation for removing the flag was his belief that a gay pride flag should not be flying from a government flagpole. He admitted, however, that he assumed that the owner of the flag had obtained permission to fly it on the statehouse lawn. Spingola also admitted that he did not pursue any other avenues in an effort to remove the flag. He did not speak with anyone at the statehouse to find out what he could do to have the flag removed.

The jury found Spingola guilty of the lesser-included offense of criminal damaging, and the trial court entered judgment on the jury verdict. On appeal, Spingola assigns the following errors:

ASSIGNMENT OF ERROR NUMBER ONE:

"The trial court erred when it entered judgment against the defendant when it lacked subject matter jurisdiction over the matter because municipalities, with their limited power to exercise only the powers of local self-government, cannot regulate the business or property of the state government and cannot enforce local ordinances upon state property."

ASSIGNMENT OF ERROR NUMBER TWO:

"The trial court erred when it overruled the defendant's request to instruct the jury on the defense of necessity as a justification for the defendant's actions."

For the reasons that follow, we overrule Spingola's assignments of error and affirm the judgment of the Franklin County Municipal Court.

By his first assignment of error, Spingola contends that the trial court lacked subject matter jurisdiction because the offense occurred on the statehouse grounds.[1] Spingola argues that a municipal court cannot enforce a municipality's local ordinance for conduct that occurred on property owned and operated by the state. We disagree.

---

1. Although Spingola raised the issue of subject matter jurisdiction for the first time on appeal, we address Spingola's argument because "issues concerning subject matter jurisdiction are not waived and will be considered by a reviewing court, even if objections to the jurisdiction of the subject matter have not been raised in the trial court." *In re Moorehead* (1991), 75 Ohio App.3d 711, 715, 600 N.E.2d 778, 781. See *Breidenbach v. Mayfield* (1988), 37 Ohio St.3d 138, 139, 524 N.E.2d 502, 502–503.

Pursuant to R.C. 1901.20, "The municipal court has jurisdiction of the violation of any ordinance of any municipal corporation within its territory * * * and of the violation of any misdemeanor committed within the limits of its territory." The territorial jurisdiction of the Franklin County Municipal Court extends to all of Franklin County. R.C. 1901.02(B). The undisputed evidence demonstrated that the offense at issue occurred in the city of Columbus, which is located in Franklin County. Spingola contends that, even though the offense occurred in Franklin County, the court may not enforce Columbus City Code 2331.08(A) because the offense occurred on the statehouse lawn. According to Spingola, the municipal court is divested of jurisdiction to hear this case by virtue of the Home Rule Amendment to the Ohio Constitution.

The Home Rule Amendment, found in Section 3, Article XVIII, Ohio Constitution, provides the following:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

Spingola argues that application of the municipal ordinance to the circumstances at issue is unlawful because Columbus does not have power of local self-government over the statehouse grounds. We note, however, that, in addition to granting municipalities authority to exercise powers of self-government, the Home Rule Amendment also grants express authority to municipalities to adopt and enforce police regulations within their territorial limits, provided the regulations are "not in conflict with general laws." Section 3, Article XVIII, Ohio Constitution. We conclude that, pursuant to the Home Rule Amendment, Columbus may enforce its ethnic intimidation ordinance in the instant matter.

■ "The authority conferred by Section 3, Article XVIII of the state Constitution upon municipalities to adopt and enforce police regulations *is limited only by general laws in conflict therewith* upon the same subject-matter." (Emphasis added.) *Akron v. Scalera* (1939), 135 Ohio St. 65, 13 O.O. 376, 19 N.E.2d 279, paragraph one of the syllabus; see, also, *Columbus v. Barr* (1953), 160 Ohio St. 209, 215, 52 O.O. 24, 27, 115 N.E.2d 391, 394–395. In *Struthers v. Sokol* (1923), 108 Ohio St. 263, 140 N.E. 519, paragraphs two and three of the syllabus, the Ohio Supreme Court addressed the nature of a "conflict with general laws" as follows:

"2. In determining whether an ordinance is in 'conflict' with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa.

"3. A police ordinance is not in conflict with a general law upon the same subject merely because certain specific acts are declared unlawful by the ordi-

nance, which acts are not referred to in the general law * * * or because different penalties are provided for the same acts, even though greater penalties are imposed by the municipal ordinance."

"[I]n order for such a conflict to arise, the state statute must positively permit what the ordinance prohibits, or vice versa, regardless of the extent of state regulation concerning the same object." *Cincinnati v. Hoffman* (1972), 31 Ohio St.2d 163, 169, 60 O.O.2d 117, 285 N.E.2d 714, 719. "Where state and local regulations concerning unlawful conduct do not conflict, the state and municipality have concurrent authority under the police power to enforce their respective directives inside the corporate limits of the city." *Weir v. Rimmelin* (1984), 15 Ohio St.3d 55, 15 OBR 151, 472 N.E.2d 341, syllabus.

Columbus City Code 2331.08(A) is not in conflict with the general law. R.C. 2927.12 is the general law prohibiting ethnic intimidation. The state statute is in all material respects identical to the Columbus ordinance proscribing the same conduct except that the city ordinance forbids conduct on the basis of sexual orientation, while the state statute is silent on sexual orientation. The city ordinance does not permit that which the state forbids nor does it prohibit that which the state expressly allows.

In support of his argument that application of the municipal ordinance at issue violates the Home Rule Amendment, Spingola argues that, under Ohio case law, municipalities cannot tax state-owned golf courses, cannot regulate state courts, and cannot permit municipal voters to decide annexation issues involving land outside the municipal territory. None of these decisions is instructive in the instant matter, however, as none involves enforcement of a local police, sanitary, or similar regulation.

Because the municipal ordinance at issue does not conflict with general law and because the conduct at issue occurred within the territorial limits of the municipality, we conclude that the Franklin County Municipal Court had subject matter jurisdiction. Accordingly, we overrule Spingola's first assignment of error.

By his second assignment of error, Spingola contends that the trial court erred because it failed to instruct the jury on the necessity defense as a legal justification for Spingola's actions. Spingola failed to provide this court, however, with any legal authority to support his argument that the trial court was obligated to instruct the jury regarding the necessity defense, and we conclude that such an instruction was not warranted.

In *State v. Brady* (1988), 48 Ohio App.3d 41, 42, 548 N.E.2d 278, 279, the Ohio Supreme Court stated that "[i]t is prejudicial error in a criminal case to refuse to give a requested charge which is pertinent to the case, states the law correctly, and is not covered by the general charge, or by another special charge

which is given." " '[R]equested instructions should be given if they are correct statements of the law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the instruction.' " *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832. When reviewing the record to ascertain whether there was sufficient evidence to support the requested instructions, " 'an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction.' " *Id.*

To show reversible error, therefore, Spingola must demonstrate that the requested instruction is a correct statement of the law and applies in light of the evidence in the case. See *Pallini v. Dankowski* (1969), 17 Ohio St.2d 51, 53, 46 O.O.2d 267, 245 N.E.2d 353, 355. Spingola's requested instruction failed to satisfy either of the two requirements.

Spingola proposed the following instructions regarding the necessity defense:

"SPECIAL INSTRUCTION NO. 5: Necessity Defense

"The Defendant asserts the defense of Necessity in this case. The defense of Necessity excuses criminal acts when the harm which results from compliance with the law is greater than that which results from a violation of the law.

"SOURCE: *Cleveland v. Sundermeier*, 48 Ohio App.3d 204, 207 [549 N.E.2d 561, 564] (Cuyahoga Co.1989).

"SPECIAL INSTRUCTION NO. 6: Elements of Necessity Defense

"The Necessity defense has three essential elements:

"(1) the act charged must have been done to prevent a significant harm;

"(2) there must have been no adequate alternative;

"(3) the harm caused must not have been disproportionate to the harm avoided.

"The first two elements are factual determinations which may be satisfied by the Defendant's reasonable belief. The third factor is a value determination. The accepted norms of society determine the relative harmfulness of the two alternatives.

"SOURCE: *City of St. Louis v. Klocker*, 637 S.W.2d 174, 177 (Mo.App.1982); LaFave & Scott, Criminal Law, § 50 at 382–86."

Spingola's proposed instruction does not accurately recite the elements of the necessity defense under Ohio law. The common-law elements of necessity in Ohio are as follows:

"* * * (1) [T]he harm must be committed under the pressure of physical or natural force, rather than human force; (2) the harm sought to be avoided is greater than, or at least equal to that sought to be prevented by the law defining the offense charged; (3) the actor reasonably believes at the moment that his act is necessary and is designed to avoid the greater harm; (4) the actor must be without fault in bringing about the situation; and (5) the harm threatened must be imminent, leaving no alternative by which to avoid the greater harm. * * *" *State v. Prince* (1991), 71 Ohio App.3d 694, 699, 595 N.E.2d 376, 379. See, also, *Trotwood v. Selz* (2000), 139 Ohio App.3d 947, 951, 746 N.E.2d 235, 238–239; *State v. Gibbs* (1999), 134 Ohio App.3d 247, 254, 730 N.E.2d 1027, 1032–1033; *Columbus v. Andrews* (Feb. 27, 1992), Franklin App. Nos. 91AP–590, 91AP–880 and 91AP–881, unreported, 1992 WL 41243.

Spingola's proposed instruction regarding the elements of the defense is derived from an appellate case interpreting the necessity defense under *Missouri* law, and it does not include essential elements of the defense in Ohio. Because Spingola's proposed instruction was not an accurate reflection of Ohio law, the trial court was not obligated to give the instruction.

■ The trial court was not required to instruct the jury regarding the necessity defense for the additional reason that the defense would not apply in light of the evidence presented at trial. "The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused." R.C. 2901.05(A). Because Spingola failed to produce evidence sufficient to establish at least two elements of the necessity defense, the trial court was not required to instruct on the defense. See *State v. Mogul* (May 15, 1998), Trumbull App. No. 97–T–0018, 1998 WL 258164 (noting that the jury shall not be instructed regarding an affirmative defense if the defendant fails to offer sufficient evidence to establish the defense).

Spingola provided no evidence whatsoever that his damage to the flag was committed under the pressure of physical or natural force. Instead, Spingola argues that Ohio should abandon the requirement for physical or natural force in favor of a more liberal rule that would allow the necessity defense when the conduct is committed under the pressure of a human source, such as the human act of raising a flag. Even jurisdictions that allow the necessity defense for harm committed by a human source, however, require that the human source of harm must be unlawful. See *St. Louis v. Klocker* (Mo.App.1982), 637 S.W.2d 174, 176. Spingola failed to provide evidence from which a reasonable jury could conclude that the rainbow flag was unlawfully raised. Even under his own proposed version of the necessity defense, therefore, Spingola was not entitled to the instruction. Spingola also failed to provide evidence that he had no alternative

but to cut the flag from the pole. In fact, Spingola admitted that he knew at least a day in advance that the flag would be raised but he did not speak with anyone at the statehouse about getting the flag removed. Spingola testified, "I didn't go through any avenues other than the one I took." Because Spingola's proposed instructions on the necessity defense did not correctly state the law and because the facts of the case did not establish the elements of the necessity defense, we overrule Spingola's second assignment of error.

For the foregoing reasons, we overrule Spingola's assignments of error and affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

Brown and Lazarus, JJ., concur.