The STATE of Ohio

v.

HOLMES.

2004-Ohio-7334.]

Hamilton County Municipal Court, Ohio.

No. C04CRB16049.

Decided Sept. 8, 2004.

Christopher Kneflin, for plaintiff.

Dan Wong, for defendant.

___

ELIZABETH B. MATTINGLY, Judge.

{¶ 1} Defendant Russell Holmes is charged with recklessly violating R.C. 2919.27, violating a protection order or consent agreement. He raises the affirmative defense of necessity.

{¶ 2} The parties have stipulated that defendant's three children, ages five, six, and seven, who were protected persons under a court order to defendant to stay away, were, in fact, at the residence where defendant was residing with friends when probation officers arrived for a routine visit at 6:45 p.m. on the evening of April 27, 2004.[1] When Probation Officer Brehm arrived, three other adults and the children were present. A family friend named Larry had dropped the children off at the request of defendant's wife. It is undisputed that the children had been required to leave their day-care facility because of lice in their hair. Defendant's wife was at work at the time.

___

1. Defendant's wife was also a protected person under the terms of the order.

{¶ 3} Defendant Holmes testified that the children were left with him at about 10:30 or 11:00 in the morning, since his wife had to work. He further stated that before attempting to deal with the situation posed by the children's arrival, he completed fixing the transmission on his vehicle, which was, at the time, up on a jack stand. As a result, he did not call his wife until an hour and a half after the children had arrived to determine exactly why Larry had delivered them to him. Larry had told him the children had lice and were required to leave day care. Defendant said that he didn't know why Larry couldn't keep the children for his wife. He testified that Larry "apparently had a reason not to watch them that day." Defendant did not ask Larry to watch them, since Larry used drugs. Other persons who might have kept the children were similarly inappropriate in his view to temporarily care for them.[2]

{¶ 4} Defendant then cut the children's hair at his wife's request to deal with the lice issue. He next called his wife again about the children at 6:00 p.m., more than eight hours after they had initially arrived. His wife said that she was working overtime. Defendant said that he could not leave the residence because he was on electronic monitoring and the children had nowhere else to go.

{¶ 5} Pursuant to a protective order issued in case No. C04CRB11961 on April 9, 2004, defendant Holmes was not supposed to have any contact with his wife and children, and he was aware of the requirements of that order. The criminal temporary protection order was served upon defendant Holmes when he was arraigned as a condition of bond in a case in which he is charged with first-degree misdemeanor domestic violence in violation of R.C. 2919.25

{¶ 6} Defendant asserts the affirmative defense of necessity. In specific terms, he is apparently urging that when his children were unexpectedly dropped off at his residence, he could not leave due to the constraints of electronic monitoring. Of necessity, he had to violate the court order to stay away from the children to protect their well-being.

{¶ 7} The necessity defense, as noted in Wharton's Criminal Law, has ancient roots that may, in fact, be traced to the Bible. 1 Wharton's Criminal Law (15th Ed.1993), Section 90. The essence of this affirmative defense is that under the force of extreme circumstances, conduct that would otherwise constitute a crime is justifiable and not criminal when the actor engages in the conduct out of necessity to prevent a greater harm from occurring. The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense such as necessity is upon the accused. R.C. 2901.05(A)

---

2. His wife's sister used drugs; his mother works in the nursing home with his wife and can't stand him; his wife's parents drink.

{¶ 8} Most states have codified the necessity defense. In Ohio, however, the defense of necessity remains a matter of common law. In the leading case of *Columbus v. Spingola* (2001), 144 Ohio App.3d 76, 83, 759 N.E.2d 473, the Tenth District Court of Appeals listed the elements of the necessity defense in Ohio as follows:

"(1) [T]he harm must be committed under the pressure of physical or natural force, rather than human force; (2) the harm sought to be avoided is greater than, or at least equal to that sought to be prevented by the law defining the offense charged; (3) the actor reasonably believes at the moment that his act is necessary and is designed to avoid the greater harm; (4) the actor must be without fault in bringing about the situation; and (5) the harm threatened must be imminent, leaving no alternative by which to avoid the greater harm." *State v. Prince* (1991), 71 Ohio App.3d 694, 699, 595 N.E.2d 376.

{¶ 9} *Spingola* dealt with the necessity defense in the context of an ethnic-intimidation charge in which the defendant subjectively believed that he was entitled, based on his personal beliefs, to cut down a rainbow flag flown at the State Capitol as part of a gay pride celebration. The appellate court let the conviction stand because defendant failed to provide evidence that the flag was unlawfully raised and that he had no alternative but to cut it from the pole.

{¶ 10} Ruling that the trial judge was not required to give an instruction on the necessity defense to the jury, the court held that the defendant had presented no evidence whatsoever that he had damaged the flag under the pressure of physical or natural force. Thus, the court ruled that the necessity defense is inapplicable in Ohio when the alleged reason for necessity arises from a human source. Significantly, this court has been able to find no case that applies the defense of necessity to the charge at issue here, nor has the court been referred to any such case.

{¶ 11} The court in *Spingola* further opined that the necessity instruction was not required, since the defendant had failed to provide evidence that he had no alternative but to cut the flag from the pole. As the defendant stated, "I didn't go through any avenues other than the one I took." Id., 144 Ohio App.3d at 84, 759 N.E.2d 473.

{¶ 12} Based on *Spingola* and its progeny, the court herein finds that the necessity defense is inapplicable to the case at bar for the same reasons advanced by the *Spingola* court. Thus, whatever act allegedly compelled defendant to violate the court's order, it was not of physical or natural origin. In addition, defendant advanced no evidence that he tried to comply with the court's order that he stay away from his children by pursuing any alternatives other than having the children remain where they were. He did not question Larry about

their circumstances. He did not notify police of his dilemma. He did not contact his wife in any expeditious way. Indeed, his response to the arrival of the children was casual at best.

{¶ 13} Frankly, even if the more liberal defense of necessity applied to the action of defendant's allowing his children to stay at his residence in violation of the court's temporary protection order, defendant has failed to establish that he had no alternative to doing what he did. As the Fifth Appellate District stated in *State v. Jarrell,* 5th Dist. No. CA–935, 2002-Ohio-3088, 2002 WL 1310420, one of the elements of the necessity defense is that the defendant had no reasonable opportunity to avoid the threatened harm except by commission of the illegal act, the performance of which must be immediate. Moreover, the defendant's subjective belief, without a demonstration that he tried or even considered other alternatives, does not prove a defense of necessity by a preponderance of the evidence. See, for example, *Dayton v. Gigandet* (1992), 83 Ohio App.3d 886, 615 N.E.2d 1131 (personal motivation of defendant is not a legitimate defense to trespass); *State v. Doakes* (Dec. 14, 2001), 2d Dist.App. No. 18811, 2001 WL 1597961 (the actor's subjective belief must be reasonable).

{¶ 14} Defendant's burden of proving the affirmative defense of necessity not having been met, the court finds that he recklessly violated the court order to stay away from his children[3] in violation of R.C. 2919.27 and therefore finds him guilty of this charge.

Judgment accordingly.

---

3. If the more liberal rule applied and defendant was charged with having contacted his wife at work to determine the situation of the children, perhaps a different result might obtain.