**CITY OF CINCINNATI, Appellant,**

v.

**BASKIN, Appellee.**

[Cite as *Cincinnati v. Baskin,* 158 Ohio App.3d 539, 2004-Ohio-5055.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–030864.

Decided Sept. 24, 2004.

Julia L. McNeil, City Solicitor, and Ernest McAdams, City Prosecutor, for appellant.

J. Robert Andrews, for appellee.

WINKLER, Presiding Judge.

{¶ 1} Plaintiff-appellant, the city of Cincinnati, in a single assignment of error, appeals the trial court's judgment of October 23, 2003, granting defendant-appellee Colt Lee Baskin's motion to dismiss a firearms-possession charge under Cincinnati Municipal Code 708–37 ("CMC 708–37"). While the sole five-page transcript of a hearing on October 23, 2003, suggests that Baskin had filed a motion to dismiss, and the city a memorandum in opposition, the record transmitted to this court includes neither. The transcript also alludes to a previous hearing on this matter, but there is no transcript of it in the record either. Nevertheless, the parties appear to be in agreement that the issue to be determined is whether the dismissal of the complaint against Baskin was proper because CMC 708–37 was in conflict with a "general law" of the state of Ohio and was, thus, unconstitutional pursuant to Section 3, Article XVIII, Ohio Constitution. In the interest of justice, we consider the appeal on that issue alone and limit our review to the conflict analysis as set out by the Ohio Supreme Court in *Ohio Assn. of Private Detective Agencies, Inc. v. N. Olmsted.*[1]

{¶ 2} As a preliminary matter, this court has already rejected several constitutional challenges to CMC 708–37 in *Cincinnati v. Langan,*[2] but we have not previously considered a constitutional challenge based on Ohio's so-called

1. (1992), 65 Ohio St.3d 242, 244–246, 602 N.E.2d 1147.

2. *Cincinnati v. Langan* (1994), 94 Ohio App.3d 22, 640 N.E.2d 200 (challenges to CMC 708–37 as violating the right to bear arms, being void for vagueness, and violating equal protection rejected).

home-rule provision, Section 3, Article XVIII, Ohio Constitution, which provides, "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." In Ohio, the right to bear arms is fundamental, but it is also subject to limitations by state statute or local ordinance.[3]

{¶ 3} According to the complaint, Baskin was charged with violating CMC 708–37, titled "Possession or Sale of Semiautomatic Firearms Prohibited." The complaint alleged that a Cincinnati police officer had seen Baskin in possession of "a semiautomatic firearm assault rifle SKS capable of a capacity of more than ten rounds. Magazine affixed not detachable." CMC 708–37(a) provides, "No person shall * * * possess a semiautomatic firearm." CMC 708–37(b) provides, "No person shall * * * possess any detachable magazine with the following capacities: (1) More than ten rifle or carbine rounds; (2) More than five shotgun rounds; (3) More than 15 handgun rounds. This section does not apply to any detachable magazine purchased or acquired for use with semiautomatic firearms registered pursuant to division (e)(3) of this section." CMC 708–37(c) provides, "No person shall * * * possess any extension tube * * * or magazine capable of increasing the capacity of a fixed or detachable magazine." CMC 708–37(h) provides, "The term 'semiautomatic' means any firearm designed or specially adapted to fire a single cartridge and automatically chamber a succeeding cartridge and ready to fire, with a single function of the trigger." CMC 708–37(i) provides, in part, "For the purpose of this section, 'semiautomatic firearm' shall have the following meanings: (1) Any semiautomatic rifle or carbine that was originally designed with or has a fixed magazine or detachable magazine with a capacity of more than ten rounds * * *."

{¶ 4} Ohio has a weapons-control scheme embodied in R.C. 2923.11 through R.C. 2923.24. R.C. 2923.17(A) provides, "No person shall knowingly acquire, have, carry, or use any dangerous ordnance." R.C. 2923.11(K) provides, " 'Dangerous ordnance' means any of the following * * * (1) Any automatic or sawed-off firearm, zip-gun, or ballistic knife."

{¶ 5} The Ohio statute upon which the disagreement turns in this case is R.C. 2923.11, which sets out various definitions. In particular, R.C. 2923.11(E) provides, " 'Automatic firearm' means any firearm designed or specially adapted to fire a succession of cartridges with a single function of the trigger. 'Automatic firearm' also means any semi-automatic firearm designed or specially adapted to fire more than thirty-one cartridges without reloading, other than a firearm chambering only .22 caliber short, long, or long-rifle cartridges."

---

3. See *Klein v. Leis,* 99 Ohio St.3d 537, 2003-Ohio-4779, 795 N.E.2d 633, at ¶ 7.

{¶ 6} Baskin argues that Ohio allows its citizens to have a firearm that can fire up to 31 rounds without reloading, but that the city, pursuant to CMC 708–37, allows its citizens to have a firearm, in this case an assault rifle, with a magazine holding up to only ten rounds. As a result of the conflict over the permitted number of rounds, Baskin's conclusion is that the city prohibits what Ohio permits, and the trial court agreed.

{¶ 7} The Ohio Supreme Court in *Ohio Assn. of Private Detective Agencies, Inc. v. N. Olmsted*[4] has established a three-part test that generally applies when determining whether a local ordinance is invalidated by a state law regulating the same subject matter. In this case, the city ordinance and the Ohio statute both concern firearms possession. Initially, it must be ascertained whether the local ordinance seeks to exercise a power of local self-government or constitutes a police regulation, (2) whether the state statute is a general or a special law, and (3) whether there is a conflict between the ordinance and the state law.[5]

{¶ 8} We have already held in *Cincinnati v. Langan* that "CMC 708–37 * * * is a reasonable exercise of the city's police power to protect its citizens from violence stemming from the use of semiautomatic weapons, and, therefore, the ordinance does not violate Section 4, Article I of the Ohio Constitution,"[6] which concerns the right to bear arms. The second step is to determine whether R.C. 2923.11(E) is a general law.

{¶ 9} The Ohio Supreme Court has held that to constitute a general law for purposes of home-rule analysis, "a statute must (1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally."[7]

---

4. (1992), 65 Ohio St.3d 242, 602 N.E.2d 1147; *Auxter v. Toledo* (1962), 173 Ohio St. 444, 20 O.O.2d 71, 183 N.E.2d 920.

5. See *Ohio Assn. of Private Detective Agencies, Inc. v. N. Olmsted,* supra, note 1 at 244–246, 602 N.E.2d 1147.

6. *Cincinnati v. Langan,* 94 Ohio App.3d 22, 30, 640 N.E.2d 200; see, also, *Dayton v. State,* 157 Ohio App.3d 736, 2004-Ohio-3141, 813 N.E.2d 707, at ¶ 31 and ¶ 109–110 (regulation of predatory lending involves the use of police power, so municipal ordinance must give way to statute, as statute permitting loans ordinance does not).

7. *Canton v. State,* 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, syllabus.

{¶ 10} With respect to these four requirements, the Ohio Supreme Court has held that statutes regulating matters such as speed limits and hazardous-waste facilities are regulations for the protection of the lives of the people of the whole state and have no special relation to any of the political subdivisions of the state, and, thus, that they have been deemed to be general laws.[8] In light of this, statutes regulating firearms possession would appear to be general laws with respect to the first three requirements. With regard to prescribing a rule of conduct, certainly the state statute addresses conduct of the citizenry, rather than actions of a municipal legislative body.[9] Therefore, we conclude that R.C. 2923.11 is a general law.

{¶ 11} Finally, we must determine whether a conflict exists between the municipal ordinance and the state statute. The purpose is to determine whether the municipal ordinance permits or licenses that which the statute forbids or prohibits, and vice versa.[10] The Ohio Supreme Court has stated, "A police ordinance is not in conflict with a general law upon the same subject merely because certain specific acts are declared unlawful by the ordinance, which acts are not referred to in the general law * * * or because different penalties are provided for the same acts, even though greater penalties are imposed by the municipal ordinance."[11] But the court has further said, "[I]nasmuch as the local ordinance restricts an activity which a state license permits, the ordinance is in conflict with a general law of the state and violates Section 3, Article XVIII of the Ohio Constitution."[12]

{¶ 12} The Tenth Appellate District has compared Columbus's ordinance prohibiting ethnic intimidation to a state statute.[13] The court concluded that the state statute was in all material respects identical to the Columbus ordinance proscribing the same conduct, except that the ordinance forbade conduct on the basis of sexual orientation, while the state statute was silent on sexual orientation.[14] Thus, the city ordinance did not conflict with a general law because it did

---

8. Id. at ¶ 38.

9. See *Canton*, supra note 8, at ¶ 34–36. ·

10. *Struthers v. Sokol* (1923), 108 Ohio St. 263, 140 N.E. 519, paragraph two of the syllabus.

11. *Struthers*, paragraph three of the syllabus.

12. *Ohio Assn. of Private Detective Agencies, Inc.*, supra note 5, at 245, 602 N.E.2d 1147.

13. *Columbus v. Spingola* (2001), 144 Ohio App.3d 76, 759 N.E.2d 473.

14. Id. at 80, 759 N.E.2d 473.

not permit that which the state forbade nor did it prohibit that which the state expressly allowed.[15]

{¶ 13} The Eighth Appellate District has addressed an alleged conflict between a Cleveland Heights ordinance and an Ohio statute concerning U-turns. The court concluded that the U-turn statute was a general statute within the meaning of Section 3, Article XVIII of the Ohio Constitution and that the municipal ordinance was consistent with and only complemented the state statute.[16] Thus, the municipal ordinance was a valid exercise of the power of local self-government as granted by Section 3, Article XVIII, Ohio Constitution. In the case sub judice, it appears to us that the municipal ordinance and the state statute differ with regard to the lawful number of rounds permitted by one possessing a semiautomatic firearm: the ordinance prohibits what the state permits. Therefore, we conclude that the municipal ordinance must give way to the state statute.[17] Accordingly, we overrule the city's single assignment of error. But in doing so, we are not taking any position on the merits of allowing a greater number of rounds; we hold only that if the permitted number of rounds is to be reduced, the proper body to do it is the state legislature, not various city councils.[18] Accordingly, we affirm the trial court's judgment.

Judgment affirmed.

HILDEBRANDT, J., concurs.

PAINTER, J., dissents.

PAINTER, Judge, dissenting.

{¶ 14} I cannot agree that a definition is a general law. The majority holds that R.C. 2923.11(E) is a general law because it addresses the conduct of the citizenry. But when did defining a term become "the conduct of the citizenry"? Definitions have nothing to do with conduct.

{¶ 15} The majority's opinion is fine until it gets to the end. It defines the issue, states the proper test, then falls into a ditch at the end, citing a case that is

---

15. Id.

16. *Cleveland Heights v. Siegel* (Dec. 16, 1993), 8th Dist. No. 65399, 1993 WL 527879.

17. See *Dayton v. State,* 157 Ohio App.3d 736, 2004-Ohio-3141, 813 N.E.2d 707 (ordinance defining predatory lending at lower interest rate than statute permits gives way to statute).

18. See *Niles v. Hale* (Apr. 29, 1983), 11th Dist. No. 3141 (ordinance defining marijuana possession as a first-degree misdemeanor gives way to statute declaring it a minor misdemeanor); overruled by *Niles v. Howard* (1984), 12 Ohio St.3d 162, 165, 12 OBR 232, 466 N.E.2d 539 (if ordinance alters punishment for offense as a felony, then ordinance is unconstitutional).

easily distinguishable—a statewide scheme to regulate predatory lending of course preempts a conflicting local ordinance on the same subject.[19] This case sets terrible precedent and will leave lawyers across the state, especially those who represent municipalities, scratching their heads.

{¶ 16} The home-rule provision of the Ohio Constitution[20] specifically grants municipalities like Cincinnati the "authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Because I do not believe that R.C. 2923.11 is a general law, I believe that it was within Cincinnati's authority to enact CMC 708–37.

{¶ 17} R.C. 2923.11(E) states the following:

{¶ 18} " 'Automatic firearm' means any firearm designed or specially adapted to fire a succession of cartridges with a single function of the trigger. 'Automatic firearm' also means any semi-automatic firearm designed or specially adapted to fire more than thirty-one cartridges without reloading, other than a firearm chambering only .22 caliber short, long, or long-rifle cartridges."

{¶ 19} Because this definition, when applied to the dangerous-ordnance statute, makes illegal the possession of a gun with a magazine that holds more than 31 bullets, does it also mean to *specifically allow* ones with fewer than 31 bullets? That would be the only way to hold the Cincinnati ordinance constitutional—that the state law evidences a specific regulatory scheme covering the universe of firearms, explosives, etc. But the majority does not say that. And I do not think that theory flies either—some firearms, explosives, and other ordnance might be more dangerous in a congested city than in rural parts of Ohio. So the legislature has shown no attempt to preempt the field. It may surely do so if it wishes, but it has not.

{¶ 20} And even if a definition were a general law, the provisions do not conflict. As the majority correctly asserts, the test is whether the municipal ordinance permits or licenses that which the state statute forbids and prohibits, and vice versa.[21] The term "license" means just that—if the state law grants a license—usually a piece of paper—to engage in certain conduct, then a local law must not interfere.[22] Obviously, R.C. 2923.11 does not specifically license anything. So does it "permit" something that the ordinance prohibits?

19.  *Dayton v. State,* 157 Ohio App.3d 736, 2004-Ohio-3141, 813 N.E.2d 707.

20.  Section 3, Article XVIII, Ohio Constitution.

21.  See *Canton v. State,* 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963.

22.  See, e.g., *Ohio Assn. of Private Detective Agencies, Inc. v. N. Olmsted,* 65 Ohio St.3d 242, 1992-Ohio-65, 602 N.E.2d 1147.

{¶ 21} Again, R.C. 2923.11 does not forbid or permit anything. But for the sake of argument, let us assume that it says that no one can carry a semiautomatic firearm with more than 31 cartridges. The Cincinnati ordinance says that no one can carry a semiautomatic firearm with more than 10 cartridges.

{¶ 22} If a person had a semiautomatic firearm with 32 cartridges, it would be illegal under the both the ordinance and the state law. So there is no conflict there. And if that same person had a semiautomatic firearm with 15 cartridges in Cincinnati, he would be violating the ordinance but not the statute. Note that the statute does not say, "You can carry any semiautomatic weapon with fewer than 31 cartridges."

{¶ 23} Thus, the ordinance does not permit anything that the statute forbids. And vice versa. And just because the legislature is silent on a subject does not mean that municipalities cannot legislate. Were that so, we could have no municipal ordinances.