**CITY OF TROTWOOD, Appellee,**

v.

**SELZ, Appellant.**

[Cite as *Trotwood v. Selz* (2000), 139 Ohio App.3d 947.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 18207.

Decided Oct. 20, 2000.

*David H. Fuchsman,* for appellee.

*Steven M. Magas,* for appellant.

FAIN, Judge.

Defendant-appellant Steven O. Selz appeals from his conviction and fine for violating Section 333.04(a) of the Trotwood Municipal Code, which provides as follows:

"No person shall stop or operate a vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic, except when stopping or reduced speed is necessary for safe operation or to comply with law."

Selz contends that the evidence in the record is insufficient to support the conviction because it is clear from the evidence that he was pedaling as hard as he could to travel at fifteen m.p.h., uphill, on his bicycle. The state argues that his conviction can be predicated upon the fact that he was traveling in the middle of the right-hand lane, thereby impeding traffic.

We conclude that a bicyclist is not in violation of the ordinance when he is traveling as fast as he reasonably can. Although Selz may have been in violation of R.C. 4511.55(A), requiring a bicyclist to travel as far as practicable on the right side of the roadway, he was not charged with a violation of that statute.

Accordingly, the judgment of the trial court is reversed, and Selz is discharged.

I

On July 16, 1999, Trotwood police officer Mary Vance was patrolling Salem Avenue when she "noticed vehicles traveling in the southbound lane in the 4800 block or slowing to a stop, and as [she] looked up Salem, Selz was driving in the middle of the traffic lane causing cars to stop and have to go over to the other lane to get around him." The posted speed limit was forty-five m.p.h. Vance testified that Selz was traveling at no more than fifteen m.p.h.

Vance testified as follows:

"Q. Now, is it your testimony that Mr. Selz was riding at a slower speed than he could have otherwise ridden?

"A. A slower speed then he—no.

"Q. He was riding at a reasonably normal bicycling speed, wasn't he?

"A. Yes, sir."

Selz testified that at the time he was stopped he was going about eighteen m.p.h., and that "that's about an average pace for a cyclist in a fitness training."

Selz was cited for a violation of Section 333.04(a) of the Trotwood Municipal Code quoted above. Following a trial, he was found guilty, and fined $100 and court costs. From his conviction and fine, Selz appeals.

II

Selz's sole assignment of error is as follows:

"The trial court erred as a matter of law in holding that a bicycle operator can be convicted of 'impeding traffic' under an ordinance prohibiting a vehicle

operator from 'impeding the normal and reasonable movement of traffic' where the bicycle operator is traveling at a normal and reasonable speed for a bicycle rider, where the bicycle operator is not stopped or traveling at a 'reduced speed' for a reasonable bicycle operator, and where traveling at the slower speed is 'necessary for safe operation or to comply with law.'"

Selz contends that although the speed at which he was operating his bicycle may have impeded traffic on Salem Avenue, his reduced speed was necessary for the safe operation of his bicycle. In fact, it was the highest speed at which he could reasonably operate his bicycle along that stretch of road. The state argues that Selz was in violation of the ordinance because his failure to operate his bicycle as near as practicable to the right side of the roadway in compliance with R.C. 4511.55(A), impeded the flow of traffic.

Selz was not charged with the violation of R.C. 4511.55(A). Had he been, the evidence in the record would be sufficient to support a conviction on that charge.

Selz was charged with violating Section 333.04(a) of the Trotwood Municipal Code, which is similar to R.C. 4511.22(A). This ordinance prohibits operating a vehicle at such a slow speed as to impede or block the normal or reasonable movement of traffic, but it excepts from its operation circumstances in which reduced speed is necessary for safe operation. Based upon the evidence in the record, it is clear that along the stretch of road in which Selz was operating his bicycle, he was traveling at the maximum speed at which he could possibly operate his bicycle, safely or otherwise.

We agree with Selz that the ordinance cannot reasonably be read as prohibiting bicyclists from using a public highway. In this regard, the case before us is similar to *Lott v. Smith* (1980), 156 Ga.App. 826, 275 S.E.2d 720. The statute involved in that case, although not applying to bicycles, was similar:

"No person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation." *Lott v. Smith, supra,* 156 Ga.App. at 827, 275 S.E.2d at 721.

That court held that an operator of a corn combine could not be found to have violated the statute:

"The uncontroverted evidence in this case shows that the corn combine was *traveling at or very close to, its highest possible speed of 17 or 18 m.p.h.*

"The operation of the corn combine, though possibly negligent for other reasons, was not negligent for lack of sufficient speed. The corn combine, was traveling at or near its highest possible speed. To *permit* the jury to impose

liability on the basis of the speed of the combine would be tantamount to a holding that the operation of farm machinery such as appellants' on the public roadway typically constitutes negligence per se. We cannot endorse such a holding. Title 68A [of the Georgia Code] does not exclude farm machinery from the public roads." (Emphasis *sic*.) *Id.*

The facts in the case before us are virtually identical, except that a bicycle is substituted for the corn combine. In both cases, the vehicle was being operated at, or close to, the highest possible speed. In either case, holding the operator to have violated the slow speed statute would be tantamount to excluding operators of these vehicles from the public roadways, something that each legislative authority, respectively, has not clearly expressed an intention to do.

Selz's sole assignment of error is sustained.

### III

Selz's sole assignment of error having been sustained, the judgment of the trial court is reversed, and Selz is ordered discharged.

*Judgment reversed.*

BROGAN, J., concurs.

GRADY, P.J., dissents.

GRADY, Presiding Judge, dissenting.

Section 333.04(a) of the Trotwood Municipal Code exempts slow-moving vehicles from its requirements when "reduced speed is necessary for safe operation or to comply with the law." R.C. 4511.22(A) contains the same provision.

Defendant–appellant Selz does not argue that the speed at which he was riding his bicycle, which was *reduced* in relation to other traffic moving in the same direction, was necessary for the "safe operation" of his bicycle or to comply with the law. Rather, he argues that it was not reasonably practicable for him to travel as fast as the traffic around him. Therefore, his claim does not fit within the only exemptions which the ordinance provides for slow-moving vehicles.

Selz's claim is more properly viewed as a defense of necessity, which demonstrates an excuse or justification for conduct which otherwise is prohibited by law:

"The necessity defense justifies conduct which otherwise would lead to criminal or civil liability because the conduct is socially acceptable and desirable under the circumstances. *Akron v. Detwiler* (July 5, 1990), Summit App. No. 14385, unreported, at 5, 1990 WL 95683. The common-law elements of necessity are: (1) the harm must be committed under the pressure of physical or natural force, rather than human force; (2) the harm sought to be avoided is greater than, or at least equal to that sought to be prevented by the law defining the offense charged; (3) the actor reasonably believes at the moment that his act is necessary and is designed to avoid the greater harm; (4) the actor must be without fault in bringing about the situation; and (5) the harm threatened must be imminent, leaving no alternative by which to avoid the greater harm." *State v. Prince* (1991), 71 Ohio App.3d 694, 699, 595 N.E.2d 376, 379.

"Necessity" is an affirmative defense and like other affirmative defenses it is fact-sensitive. Further, the burden of its proof, by a preponderance of the evidence, is on the accused. R .C. 2901.05(A).

The elements of the *necessity* defense implicate the greater issue of whether Selz should have been riding his bicycle on Salem Avenue at all under the conditions which then prevailed. Selz, who is a bicycle enthusiast, invokes an absolute right to do that. However, that assumes that other, reasonable alternatives were unavailable to him. It also "trumps" whatever hazard his slow-moving bicycle created for other traffic on the road, which is a legitimate concern of the ordinance. Also, what was reasonable for Selz might not be reasonable for another, less able cyclist, who might claim the same absolute right.

These issues cannot be resolved by a blanket, judicial expansion of the *safe operation* exemption in the ordinance. They present issues of fact, which the trier of fact must resolve. I would reverse and remand for a new trial, requiring Selz to prove his affirmative defense.