The STATE of Ohio,

v.

PATRICK.

2008-Ohio-7142.]

Lawrence County Municipal Court.

No. CRB08–1002.

Decided Dec. 23, 2008.

Jeffrey Smith, Assistant Prosecuting Attorney, for plaintiff.

R. Matthew Vital, for defendant.

---

DONALD R. CAPPER, Judge.

{¶ 1} This matter came before the court upon the defendant's motion to dismiss. The defendant, Anthony Patrick, has four charges pending against him in this court: resisting arrest under R.C. 2921.33, a first-degree misdemeanor; disorderly conduct under R.C. 2917.11, a fourth-degree misdemeanor; "Operating a bike in the Roadway" under R.C. 4511.55; and finally, failure to comply with the order or signal of a police officer under R.C. 2921.331, a first-degree misdemeanor. This final charge was filed six days after the initial three complaints were filed.

**22**

{¶ 2} The defendant alleges in his motion that there was no probable cause for the officer to stop the defendant and therefore the charges should be dismissed. The court believes this should more properly be considered a motion to suppress, as any evidence seized after an illegal arrest must be suppressed. A motion to suppress evidence is the device by which a court must determine whether evidence should be excluded because it was obtained in violation of the Fourth Amendment to the United States Constitution. *State v. Dunihue,* 161 Ohio App.3d 731, 2005-Ohio-3223, 831 N.E.2d 1082.

{¶ 3} The practical effect may be the same whether the motion is considered one to dismiss or to suppress as to the ability of the state to go forward. Whether considered as a motion to dismiss or as a motion to suppress evidence coming from an unlawful detainer under the Fourth Amendment, the court has held that once the defendant raises the issue concerning an arrest made without a warrant, the state has the burden of going forward and with persuading the court that an arrest made without a warrant falls within an exception to the warrant requirement. The burden of proof that the state must reach, however, is proof by a preponderance of the evidence, not proof beyond a reasonable doubt, which is required at trial. *State v. Barnes,* Athens App. No. 02CA28, 2003-Ohio-984, 2003 WL 754245.

{¶ 4} A hearing was held on the defendant's motion on October 17, 2008, at the Lawrence County Municipal Court. The state going forward with the evidence called one witness, deputy Charles Hammonds, of the Lawrence County Sheriff's office. The defendant called no witnesses.

FACTS

{¶ 5} Deputy Hammonds was driving east on County Road 1 in Lawrence County, Ohio, on August 19, 2008, at approximately 4:00 p.m., in uniform and in a marked cruiser when the incidents occurred that gave rise to the charges against the defendant.

{¶ 6} County Road 1 is the former U.S. 52 and is often referred to Old 52. It is a two-lane road with traffic traveling east and west. County Road 1 runs through the villages of South Point and Chesapeake and on the eastern end terminates at the downtown Huntington, West Virginia bridge. The roadway is a secondary road and is an area of mostly residences and small businesses until the Chesapeake Village limits, where there are more commercial sites.

{¶ 7} Deputy Hammonds was traveling east on County Road 1 close to Chesapeake High School when he came upon two bicyclists traveling in the same direction as the officer. The bicyclists were riding side by side in the east bound lane of County Road 1. He was the first vehicle behind the two bicyclists. The

speedometer in his cruiser was not functioning and was reading zero. Deputy Hammonds was on his way to investigate a burglary that had been called in approximately four hours earlier. He had been unable to respond earlier to the burglary call because of problems with his regular cruiser. He eventually obtained the vehicle he was using as a replacement at the time of this incident.

{¶ 8} As Deputy Hammonds followed the bicyclists, he noticed that two or more vehicles were also following behind him. He was able to pass the bicyclists at the approximate location of this court, which is the Lawrence County Municipal Court located on County Road 1, approximately .5 mile west of the Chesapeake Village limits and approximately .5 mile east of Chesapeake High School where he first came upon the bicyclists.

{¶ 9} The court takes judicial notice that the speed limit of County Road 1 in the area of Chesapeake High School and the county municipal court is 45 mph and that the speed limit changes to 25 mph in the village of Chesapeake. The court will also take judicial notice that there is no minimum speed limit anywhere on County Road 1.

{¶ 10} Deputy Hammonds testified that when he passed the two bicyclists, his best estimate was that the defendant was traveling 15 to 20 mph at that point and at all times during this incident. Deputy Hammonds testified that as he passed the defendant, Deputy Hammonds shook his head no at the defendant and then watched in his rearview mirror to see if the bicyclists either went to single file to allow cars to pass or if despite the bicyclists riding side by side the motor vehicles were able to pass them. Since as he watched in his rearview mirror neither of those two events occurred, he pulled off the roadway into the Briggs Library Branch parking lot to the right of the roadway just off the edge of County Road 1. The library is located about one block from the municipal court. Officer Hammonds testified that he wanted to speak to the cyclists because they were impeding traffic. He testified, "[I]f I didn't at least say something to them someone would call in a complaint because I let the bikes impede traffic."

{¶ 11} The officer testified that he got out of his vehicle and asked the defendant to pull over, which the defendant failed to do. The defendant purportedly said to the officer, "I have got as much right to the road as you," all the while proceeding east on his bicycle on County Road 1. Officer Hammonds requested the defendant to pull over because he felt that the bicycles were impeding traffic since there were two or more other vehicles behind the bicyclists. However, there was no testimony from him that he informed the defendant as to why he was being asked to pull over. The officer merely said to the defendant, "Pull over." Officer Hammonds was standing on the edge of the roadway outside his police cruiser when he told the defendant to pull over.

{¶ 12} Prior to Deputy Hammonds's pulling over at the library and requesting the defendant to pull over, the officer had not turned on lights and sirens but had gotten out of a marked cruiser and was in uniform.

{¶ 13} After the defendant failed to comply with the officer's request, Deputy Hammonds got back in his police cruiser, turned on the lights and sirens, and continued to follow the bicyclists. The second bicyclist, who was riding nearest to the right hand berm of the roadway, was a juvenile and was also charged, but those charges are not before this court.

{¶ 14} The defendant who is before this court was riding to the left of the juvenile cyclist more in the middle of the eastbound lane.

{¶ 15} As the cyclists rode further east toward the village of Chesapeake, Officer Hammonds instructed them on the public-address speaker of the cruiser to pull over. The officer testified that he also pulled up beside the defendant and, through the rolled-down window of the police cruiser, told the defendant that he was under arrest and to pull over.

{¶ 16} Officer Hammonds testified that the defendant continued to travel east; now reaching the village of Chesapeake. Deputy Hammonds again pulled around the cyclist attempting to block the roadway with his vehicle and getting out of his vehicle but was unable to stop them as the bicyclists went around him. Deputy Hammonds got back in his cruiser passed the defendant a third time, stopped his cruiser for the third time and then shot the defendant with a taser while the defendant was still on the bicycle as the defendant was riding through a used car lot heading in the direction of the Huntington, West Virginia bridge. Deputy Hammonds used the taser in order to bring the defendant to a stop, fearing that the defendant was going to escape to West Virginia. He then placed the defendant under arrest.

## LEGAL ISSUES

{¶ 17} This case of course raises issues that the court will address in a strictly legal nature. However, the case also broadly concerns the tension between bicycle riders and motorists using the same roadways. This judge is a licensed driver and also a regular bicyclist and therefore is familiar with both groups. There is certainly a tension between motor-vehicle drivers who do not want to be impeded or have to slow down for bicyclists and bicyclists who think they have an equal right to use the roadway.

{¶ 18} I have not recused myself from this case, because I do not personally know the defendant in this case and believe that my knowledge of bicycling is not a detriment and does not make me biased but is in fact a benefit, just as my

knowledge developed from operating a motor vehicle for over 35 years helps inform my decisions concerning cases involving the operation of a motor vehicle.

{¶ 19} The court points out that reasonable bicyclists monitor traffic situations and when there are motorists behind them, alert each other, usually by the verbal signal "car back," which signals everyone to get in to a single file so that traffic can more easily pass. The defendant in this case is alleged not to have done that, and while that may practically be inconsiderate, rude, and possibly dangerous, the questions before the court is whether there was a legal requirement to do such and whether the officer had cause to stop and then finally to arrest the defendant under the circumstances presented in this case.

{¶ 20} Searches and seizures conducted outside the judicial process, without prior approval by either a judge or a magistrate, are per se unreasonable under the Fourth Amendment, subject only to specifically established and well-delineated exceptions. *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576; *State v. Abernathy*, 4th Dist. No. 07CA3160, 2008-Ohio-2949, 2008 WL 2429274.

{¶ 21} There are two exceptions to the warrant requirement for an arrest and detention of a person. A police officer can make a short investigative stop where there is a reasonable articulable suspicion of criminal activity in order to determine if in fact criminal activity is taking place, which is called a *Terry* stop, *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, and second, an officer can make a warrantless detention and arrest where there is probable cause to believe that criminal activity has occurred. *Abernathy*, 2008-Ohio-2949, 2008 WL 2429274.

{¶ 22} Operating a bicycle in Ohio is controlled by R.C. 4511.55, which states:

(A) Every person operating a bicycle upon a roadway shall ride as near to the right side of the roadway as practicable obeying all traffic rules applicable to vehicles and exercising due care when passing a standing vehicle or one proceeding in the same direction.

(B) Persons riding bicycles or motorcycles upon a roadway shall ride not more than two abreast in a single lane, except on paths or parts of roadways set aside for exclusive use for bicycles or motorcycles.

{¶ 23} In this case, the officer filed a citation against the defendant under R.C. 4511.55 and captioned it "Riding a bike in the Roadway." It is not illegal in this state to operate a bicycle in the roadway so long as one complies with the requirements of the statute. There is no evidence or testimony from the officer that would prove a violation of this statute, as the bicyclists were riding two abreast, which is permitted by this statute.

{¶ 24} The fact that the defendant continued to ride two abreast even though there was traffic behind him is not a violation of the statute. There is no requirement in the statute that bicyclists go to single file in order to allow traffic to pass, even though that is the common and best practice of bicyclists in this area.

{¶ 25} The court is aware that at this point it has heard only the testimony of Deputy Hammonds as to the actions of the defendant, but if the officer is correct and the defendant remained in the middle of eastbound County Road 1 while there were two or more motor vehicles behind him, he was acting in a rude, inconsiderate, and possibly dangerous way. But the defendant was not acting in a way that violates the state statute governing operation of a bicycle, R.C. 4511.55.

{¶ 26} R.C. 4511.22 is the statute that governs slow-moving vehicles and impeding traffic. Deputy Hammonds based his stop of the defendant on this statute but says he filed the complaint against the defendant under R.C. 4511.55 only because the complaint involved a bicycle. It was his thinking that R.C. 4511.55 requires bicycles to follow what he called the "rules of the road," which includes the prohibition against impeding traffic found in R.C. 4511.22.

{¶ 27} According to the definition section of R.C. 4511.01, it appears to the court that a bicycle would be considered a vehicle under this statute. However, there would have to be a showing in this court's opinion that the cyclist was moving at a speed that was unreasonable for a bicycle in order for there to be a violation. This seems born out by the decision of the court in *Trotwood v. Selz* (2000), 139 Ohio App.3d 947, 746 N.E.2d 235. In *Trotwood,* the court of appeals overturned the conviction of a defendant under this section because there was no evidence that he was proceeding at a speed that was unreasonable for a cyclist. However, the court did say that there may have been sufficient evidence for a conviction under R.C. 4511.55(A), requiring the cyclist to travel as far to the right as practicable, but the defendant in that case was not charged with that violation, and the evidence was that he was a single bicyclist riding in the middle of the roadway.

{¶ 28} In this case, the officer's testimony is that he felt that the defendant was impeding traffic and that is why he asked him to pull over. It is clear to the court that a bicyclist traveling at a reasonable speed for a bicycle cannot be convicted under R.C. 4511.22. There is no evidence that the defendant here was traveling at anything other than a reasonable speed.

{¶ 29} The court finds there was no probable cause to believe that the defendant was in violation of either R.C. 4511.22 or 4511.55 at the time that Deputy Hammonds asked the defendant to pull over.

{¶ 30} After the defendant failed to stop when Deputy Hammonds told him to pull over, Deputy Hammonds got in his vehicle and immediately put on the lights and siren, but his reasoning for seeking to stop the defendant had changed, as it was now for failure to stop when the officer asked him to stop. In fact, he pulled up beside the defendant and told him that he was under arrest. He was obviously not under arrest, since he was still free to move about and the officer had not stopped the defendant's movement.

{¶ 31} The officer then tasered the defendant while the defendant was still on his bicycle, according to the officer's own statement, which did affect an arrest.

{¶ 32} As stated previously, there are two general exceptions for a stop and arrest of a person by an officer without a warrant. The investigative stop, where the officer has a reasonable articulable suspicion of criminal activity that justifies a brief investigative stop to determine if there is in fact criminal activity going on, and a stop and arrest based on probable cause that a crime has occurred. *Terry,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

■ {¶ 33} In this case, the *Terry* stop, with its reasonable-articulable-suspicion standard, does not apply, because Deputy Hammonds was an actual witness to whatever criminal activity had occurred. He had watched the defendant operate his bicycle and whatever offense if any that occurred had happened in his presence. There either existed sufficient evidence for probable cause to think that an offense had occurred or not. There was no need to investigate to see whether an offense had occurred by stopping the defendant because no additional evidence was needed or could be gleaned from talking with the defendant. Officer Hammonds's testimony that he wanted to stop the defendant in order to "at least say something to him," indicates to the court that Deputy Hammonds did not believe initially that he had sufficient probable cause to make a full arrest of the defendant. It was only after the defendant failed to heed the request to pull over that Deputy Hammonds decided to make an arrest.

{¶ 34} The court believes that the appropriate standard by which to measure the initial attempt to stop the defendant by the verbal request to pull over and the subsequent arrest of the defendant is the probable-cause standard. Was there probable cause to believe that the defendant had committed a violation of the law?

{¶ 35} The court is mindful that this is a difficult situation because of the nature of the circumstances being a traffic stop. It is not generally a good idea for a motorist to fail to comply with an officer's request, usually indicated by lights and sirens, for him to stop, because of the danger inherent in that situation to the motorist and the officer. Further, the defendant had multiple opportunities to stop and address the officer's concerns and therefore forgo the ugly

situation that arose later, but he failed to do so. However, as minimally intrusive as it may seem to require the defendant to stop and talk with the officer when requested, he had a fundamental right to be left alone under the Fourth Amendment, and in this court's opinion, was not required to stop.

{¶ 36} The court is aware that, generally, fleeing from a request for a *Terry* stop is not grounds for an arrest. *State v. Gillenwater* (Apr. 2, 1998), 4th Dist. No. 97 CA 0935, 1998 WL 150354. However, R.C. 2921.331 specifically prohibits persons from failing to comply with officers' orders regarding traffic flow. However, those orders must be lawful orders according to the statute. Here, the court does not find that the officer's request for the defendant to stop was a lawful order, because there is no indication that the defendant at that point had violated any statute.

{¶ 37} For these reasons, the defendant's motion is granted, and all evidence is suppressed that arose from the unlawful arrest of the defendant.

Motion granted.